UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHERI NEELY,

                Plaintiff,

v.

NANCY A. BERRYHILL,

                Defendant.

Case No. C17-6073JLR

ORDER REVERSING AND REMANDING FOR AN AWARD OF BENEFITS

## I. INTRODUCTION

Plaintiff Sheri Neely seeks review of the denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33. (*See* Complaint (Dkt. # 1).) Ms. Neely contends that the Administrative Law Judge ("ALJ") erred by (1) improperly rejecting Ms. Neely's subjective symptom testimony; (2) improperly rejecting the opinions of treating physician Elena Olsen, M.D.; (3) improperly rejecting the opinions and testimony from treating provider Bryan Whetton, PA-C; and (4) improperly rejecting the testimony of lay witnesses Mark Neely and Chalayn Nagunst, Ms. Neely's husband and daughter, respectively. (*See* Pl. Op. Br. (Dkt. # 12) at 2.) As discussed below, the court

ORDER REVERSING AND REMANDING
FOR AN AWARD OF BENEFITS - 1

REVERSES the final decision of Defendant Nancy A. Berryhill (the "Commissioner") and REMANDS the case for an immediate award of benefits.

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. Neely did not engage in substantial gainful activity during the period from January 3, 2008, her alleged onset date, through December 31, 2013, her date last insured (20 C.F.R. § 404.1571 *et seq.*).

**Step two:** Through the date last insured, Ms. Neely had the following severe impairments: thyroid problem; fibromyalgia; adhesive capsulitis of the shoulders; obesity; and depression (20 C.F.R. § 404.1520(c)).

**Step three:** Through the date last insured, Ms. Neely did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

**Residual Functional Capacity:** Through the date last insured, Ms. Neely could perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could stand and walk for four hours in an eight-hour workday, and sit without limitation. She could never climb ladders, ropes, or scaffolds. She could occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl. She could occasionally reach overhead. She was limited to simple, entry-level work with occasional interaction with the public and co-workers.

**Step four:** Through the date last insured, Ms. Neely could not perform past relevant work (20 C.F.R. § 404.1565).

**Step five:** Through the date last insured, Ms. Neely could perform jobs that existed in significant numbers in the national economy, including small products assembler and packaging. Therefore Ms. Neely was not under a disability at any time from January 3, 2008, the alleged onset date, through December 31, 2013, the date last insured (20 C.F.R. § 1520(g)).

(Administrative Record ("AR") (Dkt. # 6) at 31-43.) The Appeals Council denied Ms.

---

[1] 20 C.F.R. § 404.1520.

Neely's request for review, making the ALJ's decision the Commissioner's final decision. (*Id.* at 1.)

### III. DISCUSSION

Ms. Neely, as the claimant, bears the burden of proving she is disabled within the meaning of the Act. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Pursuant to 42 U.S.C. § 405(g), the court may only set aside a denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the court is required to examine the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**A.     The ALJ Erred in Rejecting Plaintiff's Symptom Testimony**

Ms. Neely contends that the ALJ erred in evaluating her symptom testimony. (*See* Pl. Op. Br. at 9-10.) The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the

claimant need only show that the impairment could reasonably have caused some degree of the symptom; she does not have to show that the impairment could reasonably be expected to cause the severity of the symptom alleged. *Id.* The ALJ found that Ms. Neely met this first step because her medically determinable impairments could reasonably be expected to cause some of the symptoms she alleged. (AR at 40.)

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).

The ALJ, finding no evidence of malingering, rejected Ms. Neely's testimony because he determined (1) it was not strongly supported by the objective medical evidence; (2) Ms. Neely's testimony regarding her limited daily activities "cannot be objectively verified with any reasonable degree of certainty"; and (3) her actual daily activities suggested fewer limitations than she stated in her testimony. (*See* AR at 37-40.) These reasons all fail to withstand scrutiny.

1. Lack of Support from Objective Medical Evidence

The ALJ's decision to reject Ms. Neely's symptom testimony because it was not strongly supported by the objective medical evidence fails for two main reasons. First, "'an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.'" *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (quoting *Bunnell v. Sullivan*, 947 F.2d 341,

345 (9th Cir. 1991)) (alteration in original); *see also* 20 C.F.R. § 404.1529(c)(2).  The ALJ accepted that the medical evidence established Ms. Neely's impairments, and that they could cause at least some level of her alleged symptoms.  (*See* AR at 40.)  The fact that the objective medical evidence could not definitively confirm Ms. Neely's level of pain was not a sufficient reason to reject her symptom testimony.  *See Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) (noting that "pain cannot be objectively verified or measured" and "the very existence of pain is a completely subjective phenomenon," so a claimant's subjective pain testimony cannot be rejected simply because it is not fully proven by objective medical findings).

Second, the ALJ made several errors in analyzing the medical evidence.  He inaccurately summarized Ms. Neely's overall medical picture.  In analyzing the medical evidence, the ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms."  *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).  Here, for example, the ALJ noted that Ms. Neely "did not report any fatigue, and said her mood had been good and her energy level had been well" during a July 2012 examination.  (*See* AR 37, 483.)  But during that same appointment, Ms. Neely reported that she felt stiff and sore, with pain in her neck, back, and hips, supporting her claims.  (*See id.* at 483.)

The ALJ further ignored the challenges associated with diagnosing and treating fibromyalgia.  Fibromyalgia is unusual in that patients have normal strength, sensation,

and reflexes; their joints appear normal; and "'[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain.'" *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (quoting *Rollins*, 261 F.3d at 863 (Ferguson, J., dissenting)). "The condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms.'" *Revels*, 874 F.3d at 656 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)). Accordingly, ALJs must construe the evidence "in light of fibromyalgia's unique symptoms and diagnostic methods" when evaluating a claimant's disability. *Revels*, 874 F.3d at 662.

The ALJ, in rejecting Ms. Neely's claimed symptoms related to fibromyalgia, pointed to only a few objective findings, one of which supported her claims and others of which were entirely irrelevant. The ALJ acknowledged that Ms. Neely was found to have 16 of 18 tender points that were tender to palpation, an indication of fibromyalgia. (*See* AR at 37, 570.) But the ALJ also noted that a "November 2010 chest x-ray showed [Ms. Neely's] lungs were clear, cardiac size and contour were normal, and no bony abnormalities were identified." (AR at 37, 533.) The ALJ failed to explain the relevance of this x-ray to Ms. Neely's fibromyalgia diagnosis, and nothing in the medical record provides an explanation. (*See id.*) None of this evidence, or the absence of further objective findings, established or disproved the existence of Ms. Neely's symptoms from fibromyalgia. The ALJ thus erred in rejecting Ms. Neely's testimony based on the alleged lack of objective medical evidence.

///

### 2. Inability to Objectively Verify Ms. Neely's Limited Daily Activities

The ALJ also rejected Ms. Neely's testimony because her allegedly limited daily activities could not be "objectively verified." This is neither a clear nor a convincing reason to reject Ms. Neely's symptom testimony. *See McKim v. Astrue*, No. 11-cv-5815-RBL-JRC, 2012 WL 5250096, at *4 (W.D. Wash. Sept. 4, 2012) (finding that the ALJ erred in rejecting the claimant's testimony based on the reasoning that her "allegedly limited daily activities cannot be objectively verified with any reasonably degree of certainty"). A claimant's testimony about her daily activities will rarely be "objectively" verifiable. The ALJ's stated reason essentially amounts to a finding that the ALJ did not believe any of the evidence Ms. Neely submitted that corroborate her statements, including medical records and lay witness statements, and thus did not believe her testimony. The ALJ was entitled to evaluate the veracity of that evidence, but could not reject Ms. Neely's symptom testimony based on a vague, blanket rejection of that evidence. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The ALJ therefore erred in rejecting Ms. Neely's testimony on this basis.

### 3. Inconsistency with Daily Activities

The ALJ finally rejected Ms. Neely's symptom testimony because he determined that her claimed limitations were inconsistent with her report that she cared for her critically ill husband in 2010. (*See* AR at 40, 489.) An ALJ may consider a claimant's daily activities in assessing her testimony. *See Fair*, 885 F.2d at 603. But daily activities that do not contradict a claimant's testimony or meet the threshold for transferrable

skills cannot form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ's reasoning here is too vague to satisfy the clear and convincing standard. The record does not indicate what Ms. Neely had to do to care for her husband during this time, nor did the ALJ provide any specifics as to what parts of Ms. Neely's testimony this evidence allegedly contradicted. The ALJ thus erred in rejecting Ms. Neely's testimony on this basis.

**B.     The ALJ Erred in Rejecting Dr. Olsen's Opinions**

Ms. Neely further contends that the ALJ erred in rejecting Dr. Olsen's opinions. (*See* Pl. Op. Br. at 3-8.) An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). If the examining doctor's opinion is contradicted by another doctor, the ALJ must still provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting the opinion. *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1042). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Briefly, the parties dispute whether Dr. Olsen's opinions are contradicted, and thus whether the ALJ was required to provide clear and convincing reasons for rejecting them,

ORDER REVERSING AND REMANDING
FOR AN AWARD OF BENEFITS - 8

or merely specific and legitimate reasons. The court need not decide this issue because under either standard the ALJ failed to provide adequate reasons.

Dr. Olsen treated Ms. Neely beginning in February 2013. (*See* AR at 477, 538.) In terms of physical limitations, Dr. Olsen opined that Ms. Neely could stand or walk for less than two hours in an eight-hour work day. (AR at 538.) Ms. Neely could sit for no more than 45 minutes at a time, for about four hours in an eight-hour work day, or six hours "on a good day." (*Id.*) Dr. Olsen opined that Ms. Neely would need to take unscheduled 20-minute breaks several times each day. (*Id.* at 538-39.) She would be absent from work more than twice a month. (*Id.* at 540.) Ms. Neely could occasionally lift less than 10 pounds, and never lift 10 pounds or more. (*Id.* at 539.) Ms. Neely also had significant limitations in reaching, handling, and fingering. (*Id.*) Finally, Dr. Olsen opined that Ms. Neely was "unemployable" for an eight-hour day. (*Id.*)

In terms of mental limitations, Dr. Olsen opined that Ms. Neely had significant issues. Ms. Neely could not travel in unfamiliar places; maintain attention for a two-hour segment; maintain regular attendance or punctuality; perform at a consistent pace without an unreasonable number and length of rest periods; deal with normal work stress; and deal with the stress of semi-skilled or skilled work. (*Id.* at 541-43.) Ms. Neely was at least seriously limited in, among other things, her ability to make simple work-related decisions; complete a normal work day and week without interruptions from her psychological symptoms; understand and remember detailed instructions; and carry out such instructions. (*Id.*)

The ALJ gave little weight to Dr. Olsen's opinions. (AR at 41.) He found that her opinions (1) relied too heavily on Ms. Neely's subjective reports; and (2) were conclusory and not supported by objective findings. (*Id.*) The ALJ further rejected Dr. Olsen's opinions that Ms. Neely was disabled or unable to work because those are issues that are reserved to the Commissioner per 20 C.F.R. § 404.1527(d). (*Id.*) The ALJ was entitled to disregard Dr. Olsen's general statement that Ms. Neely was "unemployable" because that is a conclusion reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Martinez v. Astrue*, 261 F. App'x 33, 35 (9th Cir. 2007). But the ALJ's reasons for rejecting Dr. Olsen's specific opinions on Ms. Neely's limitations fail.

1. <u>Reliance on Ms. Neely's Subjective Reports</u>

The ALJ rejected Dr. Olsen's opinions in part because he determined that there was little objective evidence, and therefore Dr. Olsen must have relied heavily on Ms. Neely's subjective testimony, which the ALJ discounted. (AR at 41.) An ALJ may justifiably discount a treatment provider's opinions if they "are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). But, as discussed above, the ALJ erred in rejecting Ms. Neely's subjective symptom testimony. *See supra* Part III.A. The ALJ thus erred in rejecting Dr. Olsen's opinions for being too heavily based on Ms. Neely's improperly rejected statements. *See Tommasetti*, 533 F.3d at 1041.

///

2. <u>Conclusory Opinions Not Supported by the Medical Evidence</u>

The ALJ also rejected Dr. Olsen's opinions because her assessments were "quite conclusory and . . . not supported by [Ms. Neely's] treatment and progress notes that are sparse in detail and objective findings." (AR at 41.) The ALJ erred in making such a generalized statement:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). The ALJ did not set forth his interpretations or explanations of the medical evidence, and thus erred in rejecting Dr. Olsen's opinions on this basis.

The ALJ did cite to three records in support of his rejection of Dr. Olsen's opinions, although he did not specifically discuss any of them. (*See* AR at 41, 477-78, 570.) But even those records do not support the ALJ's point. *Cf. Reddick*, 157 F.3d at 722-23 (reversing ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record"). Two of the records note that Ms. Neely was tired, forgetful, and tearful. (*See* AR at 477-78.) The third recounted an appointment in which Ms. Neely was noted as having "frequent headaches, dizziness, impaired coordination, memory loss, difficulty concentrating and issues with problem solving." (*See id.* at 567.) The ALJ failed to adequately support his determination here, and erred in rejecting Dr. Olsen's opinions on this basis.

## C. The ALJ Erred in Rejecting Mr. Whetton's Statements and Opinions

Mr. Whetton was one of Ms. Neely's treatment providers at Kirkpatrick Family Care. (*See* AR at 601.) The record does not reveal exactly how long he treated her, but Ms. Neely received treatment from that clinic starting in at least 2007. (*See id.* at 507.) Mr. Whetton's opinions regarding Ms. Neely's physical and mental limitations largely mirrored those of Dr. Olsen, with minor differences. (*See id.* at 635-40.)

The ALJ gave little weight to Mr. Whetton's statements and opinions. (AR at 41.) The ALJ relied on the same reasons he gave for rejecting Dr. Olsen's opinions, but added that Mr. Whetton was not an acceptable medical source. (*Id.*)

The ALJ was correct that Mr. Whetton was not an acceptable medical source. *See* 20 C.F.R. § 404.1502(a). As a result, the ALJ was free to disregard any medical diagnoses Mr. Whetton made. *See Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014) ("[L]ay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the competence of lay witnesses' to make.") (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ was, however, still required to consider Mr. Whetton's testimony concerning Ms. Neely's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)).

To reject Mr. Whetton's statements, the ALJ was required to "give reasons germane to" Mr. Whetton. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citations and quotation marks omitted). "Further, the reasons 'germane to each

witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

Even with the lower burden, the ALJ erred in rejecting Mr. Whetton's testimony based on the reasons he gave for rejecting Dr. Olsen's opinions. He erred in rejecting Ms. Neely's symptom testimony, and therefore erred in rejecting Mr. Whetton's testimony for being based on Ms. Neely's subjective reports. *See supra* Part III.B.1. The ALJ further failed to adequately explain why his interpretation of the medical evidence was more correct than Mr. Whetton's, and failed to accurately discuss the few records he identified. *See supra* Part III.B.2. The ALJ thus failed to provide germane reasons for rejecting Mr. Whetton's statements, and consequently erred.

**D.      The ALJ Erred in Rejecting Mr. Neely and Ms. Nagunst's Statements**

Mr. Neely, Ms. Neely's husband, submitted two statements in support of her claim. (*See* AR at 311-17, 349-52.) In each statement, he discussed how Ms. Neely's symptoms impacted her ability and desire to engage in common daily activities. (*See id.*)

Ms. Nagunst, Ms. Neely's daughter, also submitted a statement in support of Ms. Neely's claim. (*See id.* at 355-57.) Like Mr. Neely, Ms. Nagunst discussed how Ms. Neely's symptoms impacted her everyday life and ability to engage in daily activities. (*See id.*)

The ALJ gave the statements from these witnesses "only some weight." (*Id.* at 37.) He observed that the witnesses' allegations "mirror that [sic] of [Ms. Neely] and are not consistent with the medical evidence." (*Id.*) This reasoning is too vague to survive scrutiny. Assuming the ALJ meant that he was rejecting the statements of Mr. Neely and

Ms. Nagunst for the same reasons he rejected Ms. Neely's testimony, his reasoning fails even under the lower standard of review. *See supra* Part III.A.

Regarding the ALJ's rejection of Mr. Neely and Ms. Nagunst's statements as not consistent with the medical evidence, the ALJ once again failed to adequately explain himself. The ALJ did not identify any specific medical evidence contradicting the witnesses' statements, other than vague references to Ms. Neely experiencing "improvement with medication." (*See id.* at 37, 477-79, 570.) But those records are not inconsistent with Mr. Neely and Ms. Nagunst's statements, as they indicate continuing limitations despite some improvement. (*See id.*) The ALJ accordingly erred in rejecting Mr. Neely and Ms. Nagunst's statements on this basis. *See Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017); *see also Bruce*, 557 F.3d at 1116 (holding that an ALJ may not reject lay testimony solely because it is unsupported by medical evidence in the record).

## E.    The ALJ's Errors Were Harmful

The ALJ's errors here must be considered harmful. An error is harmful unless the court can "confidently conclude that no reasonable ALJ, when fully crediting the [improperly rejected evidence], could have reached a different disability determination." *Stout*, 454 F.3d at 1055-56. The court cannot reach such a conclusion because the ALJ misevaluated Ms. Neely's testimony, Dr. Olsen's opinions, Mr. Whetton's opinions, and the lay witness testimony. The ALJ's determination of residual functional capacity would almost certainly be different if the ALJ properly addressed this evidence, which

may change the disability determination. The ALJ's errors were consequently harmful.

## F. The Court Remands for an Award of Benefits

Ms. Neely asks the court to remand for an award of benefits. (Pl. Op. Br. at 10-11.) The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). First, the court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

The first step of this framework has obviously been met, as the ALJ did not provide legally sufficient reasons for rejecting Ms. Neely's testimony, Dr. Olsen's opinions, Mr. Whetton's opinions, and the lay testimony from Mr. Neely and Ms. Nagunst. *See supra* Part III.A-E.

The second step has been satisfied, as well. "In evaluating this issue, [the court] consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to

benefits is clear under the applicable legal rules." *Treichler*, 775 F.3d at 1103-04 (citing *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)). There are no conflicts in the evidence here with respect to the key issues. In particular, no doctor or medical provider contradicted Dr. Olsen's opinion that Ms. Neely would miss more than two days of work a month. (*See* AR at 540.)

The Commissioner argues that further proceedings are necessary so the ALJ can "purchase a consultative examination with a physician who has reviewed the entire record" because the state agency consulting physicians concluded that there was insufficient evidence from which to determine Ms. Neely's limitations, and the consulting physician who testified at the hearing stated only that Ms. Neely's impairments did not met or equal the severity of any listing.[2] (*See* Def.'s Resp. Br. (Dkt. # 13) at 13.) This would not further develop the record, though; it would simply add another opinion largely interpreting the evidence already before the court. Neither the ALJ nor the Commissioner identified any medical records contradicting Dr. Olsen's opinions on Ms. Neely's frequent work absences due to her impairments. The court therefore concludes that further administrative proceedings are unnecessary.

Having found the first two steps satisfied, the court finds that the ALJ would be required to find Ms. Neely disabled if the improperly rejected evidence were credited as true. Again, Dr. Olsen and Mr. Whetton both opined that Ms. Neely would miss more

---

[2] The court notes that the ALJ had every opportunity to question the testifying physician about Ms. Neely's limitations during the hearing, but chose not to do so. (*See* AR at 54-56.)

than two days of work a month due to her impairments. (*See* AR at 538-40, 635-37.) The vocational expert testified during the hearing that an individual missing this much work would not be able to maintain a job in a competitive work environment. (*See id.* at 72.) Accordingly, if Dr. Olsen and Mr. Whetton's opinions are credited as true, the ALJ would be required to find Ms. Neely disabled based on the vocational expert's testimony.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for an immediate award of benefits.

DATED this 6th day of September, 2018.

JAMES L. ROBART
United States District Judge